# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

TUMININU J. OLUYOLE,

              **Plaintiff,**

    **vs.**

YAHOO!, INC.,

              **Defendant.**

**8:15CV27**

**MEMORANDUM
AND ORDER**

This matter is before the Court on the Motion for Summary Judgment, ECF No. 82, filed by Defendant Yahoo!, Inc. ("Yahoo!"), and the Motion for Leave to File Sur-Reply Brief, ECF No. 96, filed by Plaintiff Tumininu Oluyole ("Oluyole"). For the reasons stated below, Yahoo!'s Motion will be granted and Oluyole's Motion will be denied.

## BACKGROUND

The following facts are those stated in the Parties' briefs, supported by pinpoint citations to evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

During the relevant time,[2] Yahoo! was a technology company with approximately 12,200 employees worldwide, 225 of whom worked in the company's Omaha,

---

[1] *See* NECivR 56.1(b)(1):
The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

[2] After Yahoo! filed its Motion for Summary Judgment, the company's "operating business was acquired by Verizon Communications Inc. on June 13, 2017." Def.'s Reply Br. Summ. J., ECF No. 95, Page ID 1341.

Nebraska, office. Oluyole began working in the Omaha office as a Revenue Share Accountant (Accountant II) on September 24, 2012, with Parker Thornburg ("Thornburg") as his immediate supervisor. Mary Rocha ("Rocha"), also an Accountant II supervised by Thornburg, was one of Oluyole's friends and coworkers at Yahoo!. Oluyole and Rocha often shared with each other their personal complaints about Thornburg's management, and Oluyole claims that Thornburg often made insulting comments and remarks about Oluyole's Nigerian food, clothing, and accent. Oluyole also claims that Thornburg made an effort to prevent Oluyole from being promoted and from advancing within the company. Nevertheless, Oluyole was promoted ahead of schedule to Senior Accounts Payable Analyst (Accountant III) on or about November 13, 2013. This position was in a new department and Laura Smiddy ("Smiddy") became Oluyole's new immediate supervisor. Oluyole alleges he complained about Thornburg's treatment to Thornburg himself and to other upper-management personnel,[3] but he never complained to Human Resources during his time at Yahoo! or to Smiddy after his promotion.

Sometime in December 2013 or January 2014, Thornburg recommended to Scott Garner ("Garner"), Thornburg's own immediate supervisor, that Rocha be terminated for poor work performance. On January 10, 2014, Rocha and Garner discussed the possibility of a severance agreement, and on January 21, 2014, Rocha voluntarily resigned from her position at Yahoo! with the understanding that she would be given a severance package.

---

[3] The individuals Oluyole claims he complained to are Scott Garner, Michelle Voss, and Terry Legg. Pl.'s Br. Summ. J., ECF No. 92, Page ID 861 ¶ 40.

It is Yahoo!'s custom to review a former employee's Yahoo!-issued computer to reassign any outstanding projects and extract any work that may have been in progress. On the day of Rocha's resignation, Thornburg and Michelle Dahlmann ("Dahlmann"), an information technology employee, logged on to Rocha's Yahoo!-issued computer to review the saved files. During the review, they discovered a completed application to work at High Sierra Energy, which inaccurately listed Oluyole as Rocha's supervisor at Yahoo!. Application for Employment, ECF No. 83-18, Page ID 754. Dahlmann and Thornburg then decided to review Rocha's instant message ("IM") conversations to determine whether Oluyole was aware of Rocha's intention to misrepresent their work relationship. They discovered a January 7, 2014, conversation where Oluyole instructed Rocha to use him as a "manager/reffersl" (sic).[4] Thornburg forwarded the application and the IM correspondence to Artimiss Fagerlund ("Fagerlund"), an H.R. employee, who investigated the matter and informed Rocha that her severance benefits would be revoked. Oluyole maintains Thornburg inappropriately reviewed Rocha's computer, misrepresented the facts regarding the issue, and "strategically concocted a story of alleged misconduct." Pl.'s Br. Summ. J., ECF No. 92, Page ID 883.

On February 13, 2014, Fagerlund met with David White ("White"), Yahoo!'s Global Process Owner-Payables, Credit & Collections Officer, to discuss the matter. White then briefed Aman Kothari ("Kothari"), Yahoo!'s Senior Vice President, Global

---

[4] The instant message exchange stated, in relevant part:

>[Oluyole]: start finding another job aggressively
>[Oluyole]: no kidding
>[Oluyole]: just use me as manager/referrsl (sic)
>[Rocha]: that's the plan, hubby is checking cox right now for open accounting spots
>[Rocha]: thanks i will

IM Correspondence, ECF No. 83-19, Page ID 759.

Controller & Chief Accounting Officer, and they decided to terminate Oluyole's employment for instructing Rocha to misrepresent their work relationship in violation of Yahoo!'s ethics policies.[5] Email Correspondence, ECF No. 83-14, Page ID 738 ("I [White] briefed Aman [Kothari] and he is in agreement that we should proceed with termination."). On February 21, 2014, White, Fagerlund, and Christina Schmitz, Smiddy's immediate supervisor, discussed how to proceed with the termination, and on February 24, 2014, Oluyole was discharged.

Oluyole claims his IM messages were misunderstood because he managed Rocha at D&K Financial, his part-time tax preparation business, and it was his intention that Rocha use him as a supervisor reference in that capacity. Rocha, however, was never an employee at D&K Financial and she was never paid for any work there. Oluyole Depo., ECF No. 92-4, Page ID 969-70. Oluyole also did not provide this as an explanation in his correspondence with Fagerlund after Oluyole was terminated. *See* Email Correspondence, ECF No. 92-24, Page ID 1256-57.

Oluyole brought this action against Yahoo!, alleging several claims, many of which have been dismissed by the Court. *See* Memorandum and Order, ECF No. 34, Page ID 326. Oluyole's remaining claims allege discrimination on the basis of his race, color, and national origin; retaliation; and hostile work environment in violation of federal

---

[5] Yahoo!'s Code of Ethics provides, in relevant part, that employees must "[m]ake sure information we disclose about our company is clear, truthful, and accurate." Yahoo! Code of Ethics, ECF No. 83-3, Page ID 603. Yahoo!'s Conduct Policy also provides:

> Yahoo is committed to the highest standards of business conduct in our relationships with each other and with users, customers, suppliers, shareholders, and others. All Yahoos are responsible for following Code of Ethics policies—failure to do so may result in disciplinary action, up to an including termination of employment.

Yahoo Conduct Policy, ECF No. 83-4, Page ID 641.

and Nebraska state law. His claims also allege Yahoo! violated the Nebraska Wage Payment and Collection Act ("NWPCA") when the company decided not to pay Oluyole a bonus or for his unused New Child Leave time after he was terminated. In its Motion for Summary Judgment, Yahoo! argues that Oluyole has not established a prima facie case of discrimination, retaliation, or hostile work environment, and that Yahoo! had a legitimate nondiscriminatory, non-retaliatory reason for terminating his employment. It further asserts that Yahoo! was not obligated, as a matter of law, to pay Oluyole a bonus or any payment for his unused New Child Leave time.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th

Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of

material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

### I. Race Discrimination and Retaliation

Oluyole claims Yahoo! discharged him in violation of Title VII[6] and the Nebraska Fair Employment Practices Act ("NFEPA"),[7] because of his status as an African-American, and his national origin—Nigerian. He also claims Yahoo! retaliated against him, in violation of 42 U.S.C. § 1981, for complaining about the treatment he received from his supervisor, Thornburg.

Title VII prohibits employers from discriminating against employees because of their race, color, or national origin, 42 U.S.C. § 2000e-2(a)(1); and 42 U.S.C. § 1981 "prohibit[s] employers from retaliating against employees for opposing racial discrimination." *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). Claims of discrimination and retaliation brought under § 1981 are analyzed in the same manner as discrimination and retaliation claims brought under Title VII, *id.*; and the Nebraska Supreme Court and the Eighth Circuit "have stated the NFEPA 'is patterned after Title VII,' and, therefore, 'it is appropriate to consider federal court decisions construing the federal legislation' when considering questions under the NFEPA." *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1039 (quoting *City of Fort Calhoun v. Collins*, 500 N.W. 2d 822, 825 (Neb. 1993)).

---

[6] 42 U.S.C. § 2000e-2.

[7] Neb. Rev. Stat. § 48-1101, *et seq.*

"To survive a motion for summary judgment with a Title VII claim, a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the *McDonnell Douglas*[8] burden-shifting framework" by first establishing a prima facie case. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015). If Oluyole is able to prove a prima facie case, "a presumption of discrimination arises and the burden shifts to [the defendant, Yahoo!,] to present evidence of a 'legitimate, nondiscriminatory [or non-retaliatory] reason for' its adverse employment action." *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016) (quoting *McDonnell Douglas*, 411 U.S. at 802). "If [Yahoo!] meets that burden, the presumption disappears and [Oluyole] must prove [Yahoo!'s] proffered justification is merely a pretext for discrimination [or retaliation]." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015). Oluyole advances both his federal claims and Nebraska state law claims under the *McDonnel Douglas* burden-shifting framework.

*a. Discrimination*

Oluyole argues he has provided direct evidence of discriminatory animus under a cat's paw theory of liability. *See Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149, 1152 (8th Cir. 2011) (explaining a cat's paw theory establishes direct evidence). This theory "applies in situations where 'a biased subordinate, who lacks decision making power, uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory [discharge].'" *Cherry v. Siemens Healthcare Diagnostics, Inc.*, 829 F.3d 974, 977 (8th Cir. 2016) (quoting *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 741 (8th Cir. 2009)). Thus, "an employer may be vicariously liable for an

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

adverse employment action if one of its agents—other than the ultimate decision maker—is motivated by discriminatory animus and intentionally and proximately causes the action." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013).

Oluyole's cat's paw theory does not establish direct evidence of discrimination. Thornburg did not make the ultimate decision to terminate Oluyole—that decision was made by White and Kothari with no involvement from Thornburg. White Depo., ECF No. 83-12, Page ID 721; Kothari Depo., ECF No. 83-13, Page ID 732; Thornburg Depo., ECF No. 83-9, Page ID 692; Johnstone Depo., ECF No. 83-15, Page ID 744. Nevertheless, Oluyole contends that because Thornburg made comments about Oluyole's Nigerian food, clothing, and accent, and because Thornburg provided H.R. with information that served as the basis for the decision to terminate Oluyole, he has provided direct evidence of discrimination.

Thornburg's comments and remarks were made at least three months before Oluyole's termination and at least two months before Thornburg's decision to review Rocha's computer and to contact H.R. There is no evidence that his prior remarks were "[ ]related, in any way," to the decision to terminate Oluyole. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quoting *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998) ("stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself" do not constitute direct evidence). Moreover, there is no evidence that Thornburg's conduct—reviewing Rocha's Yahoo!-issued computer after she resigned, and notifying H.R. that it appeared Rocha and Oluyole agreed to misrepresent their work relationship—was "motivated by discriminatory

animus" toward Oluyole. *Bennett*, 721 F.3d at 551. As such, there is no evidentiary support for Oluyole's theory that Thornburg "strategically concocted a story of alleged misconduct" in an effort to get Oluyole fired because of his race and nationality. Rather, the evidence demonstrates potential impropriety on the part of Oluyole. *See* Application for Employment, ECF No. 83-18, Page ID 754 (listing Oluyole as Rocha's supervisor at Yahoo!); *see* IM Correspondence, ECF No. 83-19, Page ID 759 (Oluyole instructing Rocha to use him as a "manager/refer[a]l"). Accordingly, the record does not contain any direct evidence of discrimination based on race, color, or nationality.

Oluyole must, therefore, satisfy the *McDonnell Douglas* burden-shifting framework and establish a prima facie case of discrimination by showing: "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson v. Am. Greeting Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012). Yahoo! Asserts that Oluyole's prima facie case fails because he did not meet Yahoo!'s legitimate expectations and because the circumstances do not give rise to an inference of discrimination, *i.e.*, the second and fourth elements are lacking.

Yahoo! notes that Oluyole violated company ethics policies when he instructed Rocha to use him as a manager/reference. Although violating a company policy may mean an employee failed to meet legitimate expectations, *see Wright v. Winnebago Indus., Inc.*, 551 F. Supp. 2d 836, 847 (N.D. Iowa 2008), there is a genuine factual dispute as to whether Oluyole actually violated Yahoo!'s company policy. It appears, on

the face of the evidence, that Oluyole dishonestly and unethically instructed Rocha to state he was her supervisor at Yahoo!—Rocha actually listed Oluyole as her Yahoo! supervisor on her High Sierra Energy application and Oluyole told her to "just use me as manager/referrsl (sic)." Application for Employment, ECF No. 83-18, Page ID 754; IM Correspondence, ECF No. 83-19, Page ID 759. Oluyole, however, maintains that he managed Rocha at D&K Financial, his part-time tax business, and that he was referring to this particular work relationship rather than their relationship at Yahoo! where he was not Rocha's manager or supervisor. Accordingly, Oluyole has raised a genuine factual dispute as to whether he violated Yahoo!'s company policy and, thus, failed to meet Yahoo!'s legitimate expectations. This dispute is not material, however, because Oluyole has not established the fourth element of a prima facie case.

Oluyole asserts that the circumstances justify an inference of discrimination because he and Thornburg engaged in similar conduct yet Thornburg, who is white, was "treated more favorably than him." Pl.'s Br. Summ. J., ECF No. 92, Page ID 886. "A plaintiff can prove the fourth element"—that the circumstances give rise to an inference of discrimination—"by putting forth facts that similarly situated employees, who are not [of the same race or nationality], were treated differently." *Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850-51 (8th Cir. 2005)). Thus, Oluyole must show that he and Thornburg were "involved in or accused of the same or similar conduct[, but were] disciplined in different ways." *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009).[9]

---

[9] The Parties disagree on the legal standard used to determine whether employees are "similarly situated" at the prima-facie-case stage of the *McDonnell Douglas* framework. In *Chappell v. Bilco Co.*, the

Oluyole asserts that Thornburg engaged in the same conduct that Oluyole was accused of engaging in, *i.e.*, Thornburg dishonestly and unethically "misrepresented facts and documents to [Yahoo!] relating to [Oluyole] and Rocha," but was never disciplined. Pl.'s Br. Summ. J., ECF No. 92, Page ID 885-86. However, the evidence demonstrates that Oluyole and Thornburg did not engage in sufficiently similar conduct to justify an inference of discrimination. Oluyole claims Thornburg misrepresented facts by telling Fagerlund that Rocha was applying to work at Gavilon when she was actually applying to work at High Sierra Energy and by stating Rocha had received an offer letter. Thornburg also told Alexi Wellman, a senior vice president, that he was concerned Rocha had listed Oluyole as her Yahoo! supervisor on her application to Gavilon. It is unclear from the evidence how Thornburg came to these conclusions, but the correct High Sierra Energy application ultimately was given to H.R. and an offer letter was never produced. Thornburg's conduct and Oluyole's conduct lack similarity because Oluyole was accused of instructing a co-worker to misrepresent a work relationship to outside employers while Thornburg inaccurately reported insignificant facts to H.R. and Alexi Wellman. The conduct not sufficiently similar to give rise to an inference of discrimination.

The evidence further shows that Mary Rocha, a similarly situated white employee, was disciplined for her own role in misrepresenting her working relationship

Eighth Circuit recognized that, with respect to the prima facie case, "two lines of cases in our Circuit have developed two [different] standards for determining whether other employees are 'similarly situated.'" 675 F.3d 1110, 1118. The court concluded that the "comparators" must be "similarly situated in all *relevant* respects," and that "the relevant respects are the conduct of the employees and any disparity in their discipline." *Id.* at 1119 (emphasis added); *see also Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009). The Court notes, however, that at the pretext stage of the *McDonnell Douglas* framework the standard for determining whether employees are "similarly situated" is more rigorous than at the prima-facie-case stage. *Henry v. Hobbs*, 824 F.3d 735, 739 (8th Cir. 2016).

with Oluyole. After it was discovered that she listed Oluyole as her Yahoo! supervisor, the company decided to revoke her severance and later decided to terminate Oluyole's employment. Thus, Rocha, a white employee from the United States, and Oluyole, an African-American employee from Nigeria, were both similarly punished for engaging in the same course of conduct. These circumstances do not give rise to an inference of discrimination based on race, color, or national origin. *See Bundy v. U.S. Bank Nat'l Ass'n*, 972 F. Supp. 2d 1055, 1060-61 (D. Minn. 2013) (finding no inference of race discrimination where a white employee and a black employee were both terminated for the same reason) (citing *Fowler v. Visiting Nurse Serv. of N.Y.*, No. 06 Civ. 4351, 2007 WL 3256129, at *5 (S.D.N.Y. Oct. 31, 2007) (finding no inference of discrimination where persons inside and outside the protected class were treated similarly)); *see also Streeter v. Premier Serv., Inc.*, 9 F. Supp. 3d 972, 980 (N.D. Iowa 2014) (finding the fourth element of the plaintiff's prima facie case was not established where some white and some nonwhite employees violated the same policy and were similarly disciplined). Therefore, Oluyole has failed to establish a prima facie case of discrimination.

Oluyole's discrimination claim would fail even if he were able to establish a prima facie case, because he cannot prove that Yahoo!'s proffered rationale for terminating his employment was a pretext. Yahoo! maintains it terminated Oluyole not because of his race, color, or national origin, but because he violated an ethics policy when he instructed Rocha to name him as a manager/referral. Thus, Yahoo! has discharged its burden of providing a legitimate nondiscriminatory reason for Oluyole's termination. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc) ("The

burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence.").

Pretext can be established by (1) "persuading the court that a discriminatory reason more likely motivated the employer;" (2) "showing that the employer's proffered reason is unworthy of credence," *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010); (3) "showing that it was unlikely an employer would have acted on the basis of the proffered reason;" (4) "showing that it was not the employer's policy or practice to respond to such problems in the way it responded in the plaintiff's case," *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1083 (8th Cir. 2013); or (5) "presenting evidence that the employer's proffered reason has changed substantially over time." *Jones*, 608 F.3d at 1046; *see also Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014). "At the pretext stage, the evidence is viewed in light of the employer's justification." *Ebersole*, 758 F.3d at 925; *see Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (explaining federal courts "do not sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination").

Oluyole argues Yahoo! deviated from its own policy when Yahoo! did not interview him or Rocha during its investigation into their misconduct. However, "[t]he appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 795 (8th Cir. 2011) (quoting *McCullough v. Univ. or Ark. For Med. Scis.*, 559 F.3d 855, 863 (8th Cir. 2009)). It must be shown that "any deficiency of investigation was related to unlawful discrimination." *Id.* As evidence

of misconduct, Oluyole points to Fagerlund's statement that "we [Yahoo!] talk to the parties involved" during the course of an investigation into employee misconduct. Fagerlund Depo., ECF No. 92-7, Page ID 1102. Yahoo!'s decision not to interview Oluyole and Rocha does not demonstrate pretext, however, because there is no evidence that this decision was related in any way to unlawful discrimination. *See Barber*, 656 F.3d at 795 (finding the plaintiff did not demonstrate pretext where there was no evidence that a deviation from policy was related to unlawful discrimination). Moreover, Oluyole has provided no evidence "that it was not [Yahoo!'s] policy or practice to respond to such problems in the way it responded in the plaintiff's case." *Ridout*, 716 F.3d at 1083.

Oluyole's argument that he did not actually violate Yahoo!'s ethics policy because his instruction to Rocha referenced their work relationship outside of Yahoo! is also not persuasive. It is not necessary that the "employee actually engaged in the conduct for which he was terminated," the "critical inquiry" is "whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *Johnson v. Securitas Sec. Serv. USA, Inc.*, 769 F.3d 605, 612 (8th Cir. 2014) (quoting *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012). On its face, the evidence demonstrates a strong inference of impropriety by both Oluyole and Rocha, and there is no evidence to suggest that Yahoo! did not, in good faith, believe they acted dishonestly and unethically. For the same reason, Oluyole has not demonstrated that Yahoo!'s "proffered explanation ha[d] no basis in fact" nor has he "persuaded the Court that a prohibited reason more likely motivated the employer." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 845 (8th Cir. 2012). Yahoo! has

consistently cited Oluyole's willingness to misrepresent his and Rocha's work relationship as the reason for his termination and, as such, he has also not shown that Yahoo!'s proffered reason has substantially changed over time.

Oluyole also argues that it is unclear who made the ultimate decision to terminate him and, therefore, it is impossible to determine, at the summary judgment stage, whether racial animus rather than Yahoo!'s proffered rationale motivated that decision. The evidence, however, reveals that White and Kothari made the ultimate decision to terminate Oluyole, Email Correspondence, ECF No. 83-14, Page ID 738,[10] and there is no evidence that suggests racial animus played a role in the decisional process. The only evidence of racial animus is the stray comments Thornburg made at least three months before the decision to terminate Oluyole, and Thornburg was not involved in that decision. White Depo., ECF No. 83-12, Page ID 721; Kothari Depo., ECF No. 83-13, Page ID 732; Thornburg Depo., ECF No. 83-9, Page ID 692; Johnstone Depo., ECF No. 83-15, Page ID 744. Oluyole has not established pretext with this argument.

Nor has Oluyole shown that he was treated in a disparate manner as compared to any similarly situated employee. Oluyole argues he and Thornburg were similarly situated but treated differently. However, they are not similarly situated—Thornburg was in a supervisory role and, as the Court previously explained, their conduct was not of comparable seriousness. *Henry v. Hobbs*, 824 F.3d 735, 739 (8th Cir. 2016) (explaining that the standard for demonstrating employees are similarly situated at the pretext stage is more rigorous than at the prima-facie-case stage); *Burton v. Ark. Sec'y of State*, 737

---

[10] "I [White] briefed Aman [Kothari] and he is in agreement that we should proceed with termination." *Id.*

F.3d 1219, 1229 (8th Cir. 2013) (stating the comparators must have "engaged in the same conduct without any mitigating or distinguishing circumstances"); *Ebersole*, 758 F.3d at 925 (explaining the comparators "must have engaged in conduct of comparable seriousness").

Oluyole has not demonstrated a prima facie case of discrimination nor has he shown that Yahoo!'s proffered reason for his termination was a pretext. Therefore, Oluyole's discrimination claims under Title VII and the NFEPA will be dismissed. *See Reyes v. Pharma Chemie, Inc.*, 890 F. Supp. 2d 1147, 1160 (D. Neb. 2012) (citing *Al-Zubaidy*, 406 F.3d at 1039-40 (failure of claims under Title VII dooms similar claims under NFEPA)).

### b. Retaliation

Oluyole does not argue that there is any direct evidence of retaliation and, as such, he must satisfy the *McDonnell Douglas* burden-shifting framework by first establishing a prima facie case of retaliation.

"To establish a prima facie case of retaliation, a plaintiff must show that: '(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two.'" *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016) (quoting *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 880 (8th Cir. 2014)). Yahoo! asserts Oluyole never engaged in statutorily protected conduct, but even if he did, his termination was not the causal result of engaging in such protected conduct.

The evidence shows a genuine dispute as to whether Oluyole engaged in protected activity. Oluyole claims Thornburg made discriminatory comments about his

food, accent, and clothes, and that he engaged in protected activity by complaining of discrimination to Thornburg himself, upper-management personnel, Rocha, and in Thornburg's performance reviews. According to the Nebraska Equal Employment Opportunity Commission, however, Oluyole reported that he never complained about Thornburg while at Yahoo!. NEOC Interview Summary, ECF No. 95-3, Page ID 1395 ("Complainant stated that he did not complain about his Supervisor because he did not feel comfortable speaking to management or another Supervisor."); NEOC Intake Form, ECF No. 83-23, Page ID 777 (stating Oluyole's termination was not due to his complaints about discrimination). Oluyole challenges the credibility and accuracy of the NEOC documents. Summary judgment is, nevertheless, appropriate on Oluyole's retaliation claim because he has not demonstrated a causal connection between his termination and any claimed protected activity.

"To establish causation, [Oluyole] must prove 'the desire to retaliate was the but for cause of' [his] termination—that is 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of [Yahoo!].'" *Wright*, 730 F.3d at 737 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ___, 133 S. Ct. 2517, 2528 (2013)); *see also Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008) ("To make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative—not merely a motivating—factor' in the employer's adverse employment decision." (quoting *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1053 (8th Cir. 2007))).

When viewed in a light most favorable to Oluyole, the evidence would not lead a rational finder of fact to the conclusion that retaliatory animus was the but-for cause of

Oluyole's termination. He has provided no evidence that White or Kothari had any knowledge of his complaints about Thornburg and he never complained to Smiddy, his immediate supervisor, between the time when he was promoted to her department and his termination. White Depo., ECF No. 83-12, Page ID 714; Kothari Depo., ECF No. 83-13, Page ID 733; Smiddy Depo., ECF No. 83-10, Page ID 698. Also, there is no evidence that any of the individuals Oluyole complained to had any involvement in the decision to terminate him. Thus, it is doubtful that Oluyole can even establish that retaliatory animus was a mere motivating factor in the decision to terminate him, let alone a determinative factor. *Van Horn*, 526 F.3d at 1148. Accordingly, he has failed to establish a causal connection between his termination and any asserted protected activity.

With respect to his claims of discrimination and retaliation, Oluyole advances the same pretext arguments. As the Court previously explained, he has not demonstrated that Yahoo!'s proffered rationale for the decision to discharge Oluyole was a pretext for discrimination and he has not demonstrated that it was a pretext for retaliatory animus. Therefore, Oluyole's § 1981 claim for retaliation will be dismissed.

## II. Hostile Work Environment

Oluyole also claims Thornburg, and thereby Yahoo!, created a hostile work environment in violation of Title VII, 42 U.S.C. § 1981, and the NFEPA. "Claims alleging a hostile work environment under § 1981 are analyzed using the same standards as Title VII claims," *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 652 (8th Cir. 2003), and "Title VII prohibits an employer from subjecting its employees to a hostile work environment because of such individual's race, color, . . . or national origin." *Al-*

*Zubaidy*, 406 F.3d at 1038 (quoting 42 U.S.C. § 2000e-2(a)(1)). "The same standard governs [Oluyole's] claims under . . . [the] NFEPA." *Reyes*, 890 F. Supp. 2d at 1162 (citing *Anderson v. Durham D & M. L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)).

"Hostile work environment harassment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016) (quoting *Jackman*, 728 F.3d at 804). To prevail on a hostile work environment claim, a plaintiff must "establish that (1) he is a member of a protected group; (2) he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment." *Banks*, 829 F.3d at 667 (quoting *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011)).

Yahoo! argues the evidence does not show that Oluyole was subjected to unwelcome harassment or that the alleged harassment affected a term, condition, or privilege of employment—the second and fourth elements respectively. Assuming, without deciding, that Oluyole was subjected to harassment, he has failed to establish that any such harassment affected a term, condition, or privilege of employment.

"In order for harassment to have affected a term, condition, or privilege of employment, the harassment must have been 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 540 (8th Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This "includes both objective and subjective

components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." *Clay*, 754 F.3d at 540 (quoting *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002)). In deciding whether a work environment is objectively offensive, the Court must "examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892-93 (8th Cir. 2005).

Oluyole has not demonstrated that his work environment was objectively offensive or hostile. Oluyole claims that Thornburg's comments about his Nigerian food, clothes, and accent as well as Thornburg's reluctance to promote him created a hostile work environment. He also claims Thornburg's performance reviews contributed to a hostile work environment. However, a hostile work environment does not exist "when the offensive conduct consists of offhand comments and isolated incidents." *Clay*, 754 F.3d at 540 (quoting *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004)); *see also Elmahdi*, 339 F.3d at 653 (stating the "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee" does not create hostile work environment conditions). Further, Oluyole testified that he never felt physically threatened, Oluyole Depo., ECF No. 92-4, Page ID 975, and the worst performance review rating he ever received was "Achieves."[11] He also testified that his job performance did not suffer while he was supervised by Thornburg. Oluyole Depo., ECF

---

[11] "On a quarterly basis, Yahoo employees receive one of five performance ratings: 'Misses,' 'Occasionally Misses,' 'Achieves,' 'Exceeds,' or 'Greatly Exceeds.'" NEOC Response to Charge of Discrimination, ECF No. 92-29, Page ID 1286 n.1.

No. 92-4, Page ID 975-76. On this evidence, no rational juror could find that Oluyole suffered the kind of pervasive or severe conditions that constitute an objectively hostile work environment.

Accordingly, Oluyole has failed to establish a prima facie case of hostile work environment under Title VII, 42 U.S.C. § 1981, and the NFEPA. His claims thereunder will, therefore, be dismissed. *See Reyes*, 890 F. Supp. 2d at 1160 (citing *Al-Zubaidy*, 406 F.3d at 1039-40 (failure of claims under Title VII and § 1981 dooms similar claims under NFEPA)).

### III. Nebraska Wage Payment and Collection Act Claims

Oluyole claims Yahoo! violated the Nebraska Wage Payment and Collection Act ("NWPCA")[12] because his unpaid bonus and unused New Child Leave time constitute wages under the NWPCA and Yahoo! failed to pay him those wages.[13]

The NWPCA requires an employer to pay "unpaid wages" to an employee who separates from the payroll "on the next regular payday or within two weeks of the date of termination, whichever is sooner." Neb. Rev. Stat. § 48-1230. The NWPCA defines wages as

---

[12] Neb. Rev. Stat. § 48-1228, *et seq.*

[13] The Court notes that each of Oluyole's federal claims have been dismissed, which raises the issue of the Court's jurisdiction over his state law claim under the NWPCA. *See Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004) ("A federal district court has the discretionary power to decline jurisdiction where it has dismissed all claims over which it has original jurisdiction."). Clearly, Oluyole's NWPCA claim does not invoke federal question jurisdiction and his Complaint does not affirmatively assert diversity jurisdiction under 28 U.S.C. § 1332. The Court finds, however, that the Complaint pleads sufficient facts to establish diversity of citizenship and a good faith claim to damages in excess of $75,000. *See* Complaint, ECF No. 1, Page ID 11-12 (claiming damages and attorney's fees under Neb Rev. Stat §§ 48-1231 & 48-1232). Further, Yahoo! has not raised a challenge to the Court's jurisdiction over this claim.

compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis. Paid leave, other than earned but unused vacation leave, provided as a fringe benefit by the employer shall not be included in the wages due and payable at the time of separation, unless the employer and the employee or the employer and the collective-bargaining representative have specifically agreed otherwise.

Neb. Rev. Stat. § 48-1229(6). The Nebraska Supreme Court has held "that a payment will be considered a wage subject to the NWPCA if (1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met." *Pick v. Norfolk Anesthesia, P.C.*, 755 N.W. 2d 382, 387 (Neb. 2008).

### *a. Incentive Bonus*

"[A] bonus qualifies as a wage subject to the NWPCA if [the above] three criteria have been satisfied." *Id.* Yahoo! argues Oluyole was not entitled to an incentive bonus, as a matter of law, because the stipulated conditions were not all met. In 2013, Yahoo! had in place a written incentive or bonus plan (the "Plan") for its fiscal year of January 1, 2013, through December 31, 2013. The Plan provided:

Bonuses paid under this Plan are not earned until fully calculated and paid. It is a condition for eligibility that Participants must be employed and not under notice of termination given by the Company or the Participant (if applicable) on the payment date (except as otherwise provided in Section H – Termination of Employment or as prohibited by applicable law). Payments cannot be determined and will not occur until after the Company determines financial results for the applicable fiscal year and completes the year-end review process for the applicable year.

Yahoo! Incentive Plan, ECF No. 83-21, Page ID 766; *see* Memorandum and Order, ECF No. 34, Page ID 332. Section H of the Plan entitled "Termination of Employment" stated in relevant part:

> To the extent permitted by applicable law, Participants will not be eligible for and shall not receive any Plan bonus if prior to the bonus payment date the Participant is no longer employed by the Company (regardless of reason, except in the case of death or disability . . .) or if the Participant is under notice of termination given by either party (if applicable).

Yahoo! Incentive Plan, ECF No. 83-21, Page ID 767; *see* Memorandum and Order, ECF No. 34, Page ID 332.

The Plan expressly conditions a bonus upon employment on the payment date. Oluyole was terminated on February 24, 2014, and bonuses were paid out on March 9, 2014. Thus, Oluyole was not a Yahoo! employee on the bonus payment date. Even so, Oluyole asserts *Knutson v. Snyder Indus., Inc.* supports his claim to a bonus. 436 N.W. 2d 496 (Neb. 1989). In *Knutson*, the Nebraska Supreme Court found the plaintiff-employee was entitled to a bonus where there was no express agreement that employment on the date of payment was a condition precedent and no such condition could be implied. *Id.* at 498-99. Thus, *Knutson* is distinguishable from this case because the Plan clearly includes current employment as an express condition to bonus payments. *See* Oluyole Depo., ECF No. 92-4, Page ID 973 (Oluyole stating that he understood he was not eligible for a bonus under the plan). It is undisputed that this condition was not satisfied and, as such, the unpaid bonus does not constitute a wage under the NWPCA as a matter of law.

### b. New Child Leave

Under the NWPCA, vacation leave is a fringe benefit[14] and employers are required "to pay earned but unused vacation leave to a separating employee." *Fisher v.*

---

[14] According to the NWPCA, "[f]ringe benefits includes sick and vacation leave plans, disability income protection plans, retirement, pension, or profit-sharing plans, health and accident benefit plans,

*PayFlex Sys. USA, Inc.*, 829 N.W. 2d 703, 709 (Neb. 2013); *see also* Neb. Rev. Stat. § 48-1229(4) & (6). However, other types of paid leave "provided as a fringe benefit by the employer shall not be included in the wages due and payable at the time of separation, unless the employer and the employee . . . have specifically agreed otherwise." Neb. Rev. Stat. § 48-1229(6). Thus, the NWPCA provides that "employers [are] not required to pay separating employees any unused paid leave *except* vacation leave." *Fisher*, 829 N.W. 2d at 712 (emphasis in original). Yahoo! argues the company does not owe Oluyole a payment for his unused New Child Leave time because it does not constitute earned but unused vacation time. Yahoo! contends the unused New Child Leave time is a fringe benefit not "included in the wages due and payable [to an employee] at the time of separation." Neb. Rev. Stat. § 48-1229(6).

The NWPCA "does not define the term 'vacation leave' as distinguished from other types of 'paid leave.' But a 'vacation' from work is ordinarily understood to mean a paid leave of absence granted to an employee for rest and relaxation." *Fisher*, 829 N.W. 2d at 710. "Paid vacation leave is not conditioned upon an event, such as a holiday, an illness, or a funeral: 'it is not conditioned upon anything other than the employee's rendering services for the employer.'" *Id.* (quoting *Paton v. Advanced Micro Devices, Inc.*, 197 Cal. Rptr. 3d 784, 791 (2011)). "Instead, an employee may use his or her earned vacation leave for any personal reason without conditions, including for an illness or disability." *Fisher*, 829 N.W. 2d at 710-11. In *Fisher*, the Nebraska Supreme Court drew a distinction between paid vacation leave and paid sick leave based on the

---

and any other employee benefit plans or benefit programs regardless of whether the employee participates in such plans or programs." Neb. Rev. Stat. § 48-1229(4).

fact that "sick leave [was] contingent upon an occurrence," *i.e.*, getting sick, "and vacation leave [was] not." *Id.* at 711. The Court also focused on the fact that vacation time is earned and accrues over time. Yahoo!'s New Child Leave policy shares none of the relevant distinguishing characteristics associated with paid vacation leave.

Yahoo!'s New Child Leave policy provides its employees with eight weeks of paid, job-protected leave if they qualify for all Yahoo! benefits and "are a new parent (mother or father) through birth, adoption, foster child placement or surrogacy." New Child Leave Policy, ECF No. 83-22, Page ID 770. The Policy also provides that "Yahoo!'s responsibility to continue New Child Leave and to maintain group health plan benefits coverage will cease at the time of your termination of employment." *Id.* at Page ID 771. On October 13, 2013, Oluyole's child was born and his request for New Child Leave was approved to begin in May of 2014.

Unlike paid vacation leave, New Child Leave is contingent upon a Yahoo! employee becoming a new parent. Thus, Yahoo! employees were not permitted to use New Child Leave for "any personal reason without conditons." *Fisher*, 829 N.W. 2d at 710-11. Furthermore, New Child Leave is not earned and does not accrue like paid vacation leave; up to eight weeks is granted to all qualifying employees that become new parents. The New Child Leave policy also does not provide for any correlation between the amount of work done and the amount of New Child Leave time granted. Oluyole's unused New Child Leave time does not constitute earned but unused vacation time and, as such, it is not a wage under the NWPCA.

Therefore, Oluyole's claim for unpaid wages under the NWPCA will be dismissed because neither the unpaid bonus nor the unused New Child Leave time constitutes a wage under the NWPCA.

## CONCLUSION

Oluyole's discrimination and retaliation claims will be dismissed because he has failed to established a prima facie case for either claim and he has not demonstrated that Yahoo!'s proffered legitimate rationale for his termination was a pretext. Oluyole's hostile work environment claim will also be dismissed because he has not established a prima facie case. With respect to Oluyole's NWPCA claim, he is not entitled to payments for an unpaid incentive bonus, nor for unused New Child Leave time, as a matter of law.

Oluyole's Motion for Leave to File a Sur-Reply Brief will be denied because Yahoo! did not raise any new issues in its Reply Brief and Oluyole's claims do not survive summary judgment even when the evidence to which Yahoo! objected in its Reply Brief is considered by the Court.

Accordingly,

IT IS ORDERD:

1.      The Motion for Summary Judgment, ECF No. 82, filed by Defendant Yahoo! is granted;

2.      This action is dismissed, with prejudice;

3.      The Motion for Leave to File a Sur-Reply Brief, ECF No. 96, is denied; and

4.      A separate judgment will be entered.

Dated this 7th day of August, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge